UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 OCT 31  PM 2: 41

BY_____
DEPUTY CLERK

| | |
|---|---|
| AMY FORDHAM-DUFF,<br>    Plaintiff, | ) ) ) |
| v. | ) ) |
| DARTMOUTH-HITCHCOCK<br>MEDICAL CENTER,<br>DARTMOUTH-HITCHOCK CLINIC, INC.<br>and ORTHOCARE MEDICAL EQUIPMENT, LLC<br>    Defendants. | ) ) ) ) ) ) |

DOCKET NO. 2:14-cv-233

## COMPLAINT

Plaintiff, Amy Fordham-Duff, by and through her attorney Thomas Sherrer, alleges as follows:

## PARTIES

1.    Plaintiff Amy Fordham-Duff (hereinafter "Ms. Fordham-Duff") is a resident of Williamstown, Washington County, State of Vermont.

2.    Defendant Dartmouth-Hitchcock Medical Center (hereinafter "DHMC") is a non-profit corporation incorporated under the laws of the State of New Hampshire, with its principal place of business located at One Medical Center Drive, Lebanon, Grafton County, State of New Hampshire.

3.    Defendant Dartmouth-Hitchcock Clinic, Inc. (hereinafter "DHC") is a non-profit corporation incorporated under the laws of the State of New Hampshire, with its principal place of business located at One Medical Center Drive, Lebanon, Grafton County, State of New Hampshire.

4.    Defendant OrthoCare Medical Equipment, LLC (hereinafter "OrthoCare") is a for profit limited liability company incorporated under the laws of the State of New Hampshire,

with its principal place of business located at 700 Lake Avenue, Suite 6, Manchester, NH 03103.

## VENUE AND JURISDICTION

5.      Plaintiff Ms. Fordham-Duff is a resident of the State of Vermont and the Defendants' principle places of business are in New Hampshire. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## FACTUAL ALLEGATIONS

6.      At all relevant times James B. Ames, M.D. ("Dr. Ames") was a licensed New Hampshire physician in the State of New Hampshire and employed by Defendants DHMC/DHC.

7.      At all relevant times, OrthoCare was a healthcare provider that offered orthopedic durable medical equipment including, but not limited to, a Continuous Passive Motion (hereinafter "CPM") device.

8.      DHMC/DHC housed an office for OrthoCare in their facility and specifically recommended orthopedic patients use OrthoCare products and thereby OrthoCare was acting as an agent on behalf of DHMC/DHC.

9.      At all relevant times, Ms. Fordham-Duff was a patient of Defendants DHMC/DHC.

10.     In the fall of 2011, Ms. Fordham-Duff was referred to Defendants DHMC/DHC for evaluation of knee pain.

11.     On November 3, 2011, Ms. Fordham-Duff underwent the following procedures performed by Dr. Ames: arthroscopy knee, multiple drilling and microfracture.

12.     Ms. Fordham-Duff understood she was the first patient Dr. Ames had performed

2

this procedure on at DHMC.

13.    The Defendants were aware or should have been aware prior to the surgery that Ms. Fordham-Duff had risk factors that increased her chances of having Deep Vein Thrombosis ("DVT").

14.    At her discharge, Ms. Fordham-Duff was not prescribed blood thinning medication and/or compression stockings.

15.    At her discharge, Ms. Fordham-Duff was directed to OrthoCare's offices within DHMC to make arrangements to obtain a CPM device to use in her rehabilitation.

16.    Within a day or two of the discharge, problems developed with the CPM device.

17.    Eventually, OrthoCare did provide a replacement CPM device(s).

18.    Because of problems with the device, Ms. Fordham-Duff was not able to use the CPM device as initially prescribed.

19.    Ms. Fordham-Duff or her mother made numerous phone calls to Defendants describing increased pain in the calf and problems with the CPM device.

20.    On or about November 11, 2011, Ms. Fordham-Duff met with Dr. Ames and informed him of pain in her calf and problems with the CPM device.

21.    Ms. Fordham-Duff was told by Dr. Ames that the inability to use the CPM device for a day or two would not adversely affect her recovery.

22.    On November 25, 2011, Ms. Fordham-Duff suffered a surgical provoked pulmonary embolism and left lower extremity deep vein thrombosis that subsequently required hospitalization, therapy and medication.

23.    Ms. Fordham-Duff has been diagnosed with Post Thrombotic Syndrome and Lyphodomia in her left leg.

24.     This condition has left Ms. Fordham-Duff disabled.  She has lost her job of 23 years at Vermont Mutual and has been diagnosed with Posttraumatic Stress Disorder.

25.     Ms. Fordham-Duff's lost wages and incurred medical bills exceed $1 million dollars.

## COUNT I – MEDICAL NEGLIGENCE

26.     Plaintiff incorporates as if fully set forth herein paragraphs 1 through 25 of this complaint.

27.     On or about November 3, 2011, Ms. Fordham-Duff was a patient of Defendants DHMC/DHC and its agent-physicians at the facilities of Defendants DHMC/DHC, at which time Defendants DHMC/DHC undertook for a valuable consideration to attend to Ms. Fordham-Duff skillfully and assure that she would be given proper care and treatment.

28.     Defendants DHMC/DHC owed a duty to Ms. Fordham-Duff to exercise the degree of knowledge or skill possessed, or the degree of care ordinarily exercised by a reasonably skillful, careful and prudent health care professional engaged in a similar practice in its respective specialties.

29.     Defendants DHMC/DHC breached its duty of care it owed to Ms. Fordham-Duff because it either lacked this degree of knowledge or skill, and/or failed to exercise this degree of care when it negligently failed to take necessary steps to guard against Ms. Fordham-Duff's development of blood clots, Deep Vein Thrombosis ("DVT") and embolisms.

30.     As a direct and proximate result of Defendants DHMC/DHC negligence and breach of duty, Ms. Fordham-Duff has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to

earn money.  These losses are permanent and continuing in nature and Plaintiff will continue to suffer these losses in the future.

## COUNT II – NEGLIGENCE AGAINST DISTRIBUTOR ORTHOCARE

31.     Plaintiff incorporates as if fully set forth herein paragraphs 1 through 30 of this complaint.

32.     When leased and used by Ms. Fordham-Duff, the CPM device was in its original state and in the same defective condition that it was in when the Defendant OrthoCare leased and delivered it.

33.     At all relevant times, the CPM device was used by Ms. Fordham-Duff for its intended purpose and as directed.

34.     At all relevant times, Defendant OrthoCare undertook activities to aggressively advertise, market, and leased the CPM device.

35.     Defendant OrthoCare, as the lessor or distributor of the CPM device, owed a duty to Ms. Fordham-Duff to exercise reasonable care. That duty included, but was not limited to, exercising reasonable care by:

    a.     Inspecting the subject product to ensure that it was reasonably safe and free from defects;

    b.     Adequately testing the CPM device;

    c.     Adequately warning of the CMP device's dangerous propensities;

    d.     Warning of any health hazards or dangers associated with the use of the CPM device; and

    e.     Using reasonable care in testing, monitoring, distributing and selling the

product.

36.     Defendant OrthoCare, as lessor or distributor of the CPM device, breached its duties owed to Ms. Fordham-Duff by negligently and carelessly:

      a.    Failing to inspect the CPM device to ensure that it was reasonably safe and free of defects;

      b.    Failing to adequately warn of the CPM's device dangerous propensities;

      c.    Failing to monitor the CPM device and its uses in the scientific, medical community and the general population;

      d.    Failing to warn of any health hazards or dangers associated with the use of the subject product; and

      e.    Failing to use reasonable care in testing, monitoring, distributing, and selling the CPM device.

37.     The Defendant OrthoCare knew or should have reasonably foreseen that its wrongful acts and omissions would injure Ms. Fordham-Duff.

38.     As a direct and proximate result of the acts and omissions of Defendant OrthoCare, as described herein, Ms. Fordham-Duff, has suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. These losses are permanent and continuing in nature and Ms. Fordham-Duff will continue to suffer these losses in the future.

## COUNT III- STRICT LIABLITY AGAINST DISTRIBUTOR ORTHOCARE

39.     Plaintiff incorporates as if fully set forth herein paragraphs 1 through 38 of this complaint.

40.     At all relevant times, Defendant OrthoCare was in the business of selling, leasing or distributing, inter alia, the CPM device to the general public and Ms. Fordham-Duff.

41.     Defendant OrthoCare knew that the CPM device would be used and was used, without inspection for defects by Ms. Fordham-Duff.

42.     Defendant OrthoCare placed the CPM device in the general stream of commerce where it was used by Ms. Fordham-Duff.

43.     The CPM device was defectively designed or manufactured because its use resulted in a substantial and unreasonable likelihood of causing physical injury that rendered this product unreasonably dangerous for its intended use.

44.     The CPM device was far more dangerous than an ordinary consumer would expect and was unsuitable for the rehabilitation from micro knee surgery.

45.     Ms. Fordham-Duff was unaware of the dangerous propensities and defective condition of the CPM device.

46.     The CPM device was intended for use in rehabilitation from micro knee surgery. Ms. Fordham-Duff relied upon the safety of the CPM device.

47.     The CPM device, leased or distributed by Defendant OrthoCare that was used by Ms. Fordham-Duff, was in the same defective condition as when it left Defendant OrthoCare's control and custody.

48.     As a direct and proximate cause of the defective nature of the CPM device, and Defendant OrthoCare's failure to warn of the defect, Ms. Fordham-Duff has suffered bodily

injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of ability to earn money. These losses are permanent and continuing in nature and Ms. Fordham-Duff will continue to suffer these losses in the future.

WHEREFORE, Plaintiff demands judgment against the Defendants for:

a.    Compensatory damages;
b.    Costs;
c.    Such further relief as the Court deems just.

## JURY DEMAND

The Plaintiff, by and through her attorney, Thomas Sherrer, PLLC, respectfully requests a trial by jury on all issues.

DATED AT Burlington, Vermont, this 31st day of October 2014.

THOMAS SHERRER, PLLC

Thomas J. Sherrer, Esq.
Waterfront Plaza
180 Battery Street, Suite 360
Burlington, VT 05401
(802) 881-0757

Attorney for the Plaintiff